526 S.E.2d 320

**STATE of West Virginia ex rel. Stanley M. MYERS, Petitioner,**

**v.**

**Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County, Respondent.**

**No. 26425.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1999.

Decided Dec. 8, 1999.

Concurring Opinion of Justice Maynard, Dec. 16, 1999.

Robert C. Stone, Jr., Esq., Martinsburg, West Virginia, Attorney for Petitioner.

Pamela Jean Games–Neely, Esq., Prosecuting Attorney, Berkeley County, Christopher C. Quasebarth, Esq., Assistant Prosecuting Attorney, Berkeley County, Martinsburg, West Virginia, Attorneys for Respondents.

RISOVICH, Judge:

Petitioner, Stanley M. Myers (hereinafter "Petitioner"), filed this writ of prohibition seeking to prohibit the enforcement of an order entered on April 14, 1999, by Judge David H. Sanders of the Circuit Court of Berkeley County, regarding Petitioner's assertion of his Fifth Amendment privilege in a

habeas corpus deposition. In his order, Judge Sanders states that "this Court holds that the petitioner may assert the privilege against self-incrimination; however, the Court may draw adverse inferences from the invocation of the privilege." Petitioner asserts that Judge Sanders' ruling is an abuse of discretion.[1] Respondent, the Honorable David H. Sanders, Judge (hereinafter "Respondent"), contends that the circuit court did not err by ruling Petitioner could make Fifth Amendment objections during his deposition upon an articulated basis and that adverse inferences could properly be drawn from such assertion. Because we find that the circuit court did not err in its ruling, we deny Petitioner's petition for a writ of prohibition.

## I. Background Facts

This writ of prohibition arises out of a civil habeas corpus proceeding. Petitioner has been convicted by a jury of three counts of first degree sexual assault and one count of third degree sexual assault committed against four minor male victims. Petitioner became acquainted with his victims through his role as a counselor to one of the victims. Petitioner instituted a civil proceeding in habeas corpus in an effort to overturn his conviction. In his habeas petition, Petitioner alleges that he was denied a speedy trial, he was denied due process of law, that the court improperly conducted an ex parte voir dire of a sitting juror, that the trial was improperly continued without his presence, that the court failed to comply with Rule XVII of the West Virginia Trial Court Rules, that the court improperly admitted hearsay testimony and ineffective assistance of both trial and appellate counsel.

On March 3, 1999, Petitioner was deposed by assistant prosecuting attorney Christopher Quasebarth for four and one-half hours. Petitioner alleges that the prosecuting attorney substantially deviated from the facts and allegations raised in the petition for habeas corpus, that he propounded questions in an attempt to have the Petitioner waive his Fifth Amendment privilege against self-in-

crimination and that he delved into irrelevant issues. Accordingly, a motion to compel was filed by the respondent in the habeas proceeding and Petitioner filed a motion for a protective order. Judge Sanders did not rule on Petitioner's motion for a protective order; however, he did grant the motion to compel on April 14, 1999. In granting the motion to compel, Judge Sanders ruled that Petitioner could not refuse to answer questions on the basis of relevancy objections and that Petitioner must articulate a basis on the record for any privilege asserted. Judge Sanders also ruled that Petitioner "may assert the privilege against self-incrimination; however, the Court may draw adverse inferences from the invocation of the privilege." It is from this order that Petitioner seeks a writ of prohibition.

## II. Standard of Review

■ Petitioner has filed a writ of prohibition seeking to prevent the enforcement of the April 14, 1999, order. Petitioner contends that the circuit court has abused its discretion in issuing the order. We have held that:

> "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

Syl. Pt. 2, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984).

■ In syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we set forth the applicable standard for determining whether to grant a writ of prohibition in cases when a petitioner asserts that the circuit court has exceeded its legitimate powers:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower

---

1. Petitioner also sought in his petition for a writ of prohibition to prevent the circuit court from unsealing his pre-sentence investigation report.

However, this Court's show cause ruling pertained only to the Fifth Amendment issue.

tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Id.* In addition, we have held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992).

■ This case presents a purely legal question for review. Accordingly, the following standard of review applies: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

### III. Discussion

The sole issue before this Court is whether the circuit court erred by ordering that it could draw an adverse inference from Petitioner's Fifth Amendment objection to ques-

tions propounded to him during a deposition in his habeas corpus proceeding. Petitioner contends that the circuit court abused its discretion in ruling that it could draw an adverse inference from his assertion of his privilege against self-incrimination. Petitioner further contends that the circuit court's ruling which requires him to articulate a basis for his objection without any additional requirement that the prosecutor's questions relate directly to the allegations in his habeas corpus petition is an abuse of discretion. As explained above, the only issue before us is the Fifth Amendment question and we will not address Petitioner's relevancy arguments.

■ The Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution prohibit the compelling of self-incriminating testimony in criminal cases. In syllabus point one of *State ex rel. Osburn v. Cole,* 173 W.Va. 596, 319 S.E.2d 364 (1983) we extended this Fifth Amendment right: "The Fifth Amendment privilege against self-incrimination is not limited to the context of criminal trials but can be claimed in any proceeding, whether it is criminal or civil, administrative or judicial, investigatory or adjudicatory." The extraordinary remedy of habeas corpus is a civil, as opposed to criminal proceeding. West Virginia Code § 53–4A–1(a) (1994) provides, in part, that "[a]ll proceedings [for post-conviction habeas corpus relief] in accordance with this article shall be civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." *See also State ex rel. Harrison v. Coiner,* 154 W.Va. 467, 476, 176 S.E.2d 677, 682 (1970) ("Habeas corpus proceedings are civil proceedings.").[2]

■ We recently addressed whether or not alleged assailants could be prohibited by a trial court from refusing to answer deposition questions, based on the Fifth Amend-

---

**2.** The rules of discovery are, of course, available in civil proceedings. However, prior to the 1998 amendments to the West Virginia Rules of Civil Procedure, Rule 81(a)(5) specifically exempted the application of those rules to habeas corpus proceedings: "Rules 5(b), 5(e) and 80 apply, but the other rules do not apply, to proceedings under the writs of mandamus, prohibition, habe-

as corpus, and quo warranto, and upon an information in the nature of quo warranto." The 1998 amendments removed this exclusionary provision. Both Petitioner and Respondent agree that the West Virginia Rules of Civil Procedure now apply to habeas corpus proceedings, but we decline to specifically address this issue at this time.

ment, in a civil personal injury proceeding for damages, despite the pendency of a criminal case arising from the same assault. The assailants' concern, of course, was that their answers could be used against them in the criminal case. In syllabus point two of *State ex rel. Wright v. Stucky*, 205 W.Va. 171, 517 S.E.2d 36 (1999), we held that:

> Neither the statutory limitation created by W.Va.Code, 57–2–3 [1965], nor a protective order under Rule 26(c) of the West Virginia Rules of Civil Procedure, provide the "use immunity" protection that permits a court to require a person to answer questions in civil discovery, over a constitutional objection based on the Fifth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution, where the answers to the questions my be self-incriminating.

In *Stucky*, we found that the circuit court could not order the alleged assailants to give answers to deposition questions over their "bona fide assertion of the constitutional right to remain silent about information that might tend to be self-incriminating." *Id.* at 175–176, 517 S.E.2d at 40–41. However, in footnote seven of *Stucky*, we explained that "[t]he balancing of the self-incrimination right vis-a-vis other rights in civil proceedings is a complex area of jurisprudence." *Id.* at 176 n. 7, 517 S.E.2d at 41 n. 7. Specifically, we observed "that in some circumstances, a party may permissibly be required to risk adverse consequences in civil proceedings, as a result of their silence based on the assertion of their right against compelled self-incrimination." *Id.*

 In abuse and neglect cases, a parent's invocation of the Fifth Amendment during testimony opens the door for the trial court to draw an adverse inference from that silence. In syllabus point two of *West Virginia Department of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996), we held that:

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

*Id.* at 492, 475 S.E.2d at 868. We further explained that " 'the prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment "does not preclude the inference where the privilege is claimed by a *party to a civil cause.*" ' " *Doris S.*, 197 W.Va. at 498, 475 S.E.2d at 874, *quoting Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

 In the instant case, the issue is not silence in the face of criminal accusations, but silence by Petitioner in a civil action in response to discovery deposition questions propounded to him. All phases of the deposition examination are subject to the sound discretion of the court, which can make any orders necessary to prevent the abuse of the discovery and deposition process. "A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion." Syl. Pt. 1, in part, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996). Because of this broad discretion, we are generally quite hesitant to interfere in a trial court's decisions regarding discovery issues.

Footnote seven of *Stucky, supra,* implies that an adverse inference can be properly drawn from a party's invocation of the Fifth Amendment in response to a deposition question in a civil habeas corpus proceeding. This particular issue has been decided by the United States District Court for the Eastern District of California in *Bean v. Calderon*, 166 F.R.D. 452 (E.D.Cal.1996). In *Bean*, the habeas corpus petitioner was willing to be deposed "as long as the questions asked directly related to the allegations in the petition, and petitioner could invoke the Fifth Amendment privilege as he saw fit without any adverse inference being drawn on ac-

count of its invocation." *Id.* at 453.[3] The petitioner argued that if his habeas corpus petition were granted, a criminal retrial would be necessary and he, therefore, should not be forced to waive his Fifth Amendment privilege, which was the practical effect of allowing the court to draw an adverse inference from his silence. *Id.* at 454.[4]

In *Bean,* the federal district court found that the petitioner's argument was flawed and held that the state was entitled to depose the petitioner subject to his right to invoke the Fifth Amendment privilege, but an adverse inference could be drawn from the invocation of that privilege. The federal district court stated that "[f]or the most part, the cherished, constitutional protections of criminal procedure, and the issue here concerns the invocation of a constitutional protection, have no application in habeas corpus proceedings." *Bean,* 166 F.R.D. at 454.

We recognize that habeas proceedings are in fact often the only place that certain alleged errors in a criminal trial are raised, and thus, though nominally civil, they have important criminal law components. It is decidedly not appropriate for a prosecutor *or* a petitioner in a habeas corpus proceeding to try to misuse any permissible discovery process related to a habeas proceeding to inquire beyond the issues and allegations raised in the habeas petition, or to seek evidence that could be readily obtained from other sources without the discovery process. Similarly, any adverse inferences permissibly drawn by the circuit court in a habeas corpus proceeding from a petitioner's or other witness' silence must be relevant to issues raised in the petition.

▇▇▇ In the case before us, Petitioner's sworn testimony in his verified habeas corpus petition is that he would have testified at trial but for his trial counsel's failure to

properly prepare him to do so and that his trial counsel failed to object to certain trial testimony regarding unspecified collateral crimes. Clearly, it is improper for Petitioner to raise these verified, factual assertions and then be able to hide behind the Fifth Amendment, with no adverse impact. In some circumstances a party may permissibly be required to risk adverse consequences in civil proceedings as a result of his or her silence based on the assertion of the right against compelled self-incrimination. Accordingly, we hold that a habeas corpus petitioner may invoke the privilege against self-incrimination, as found in the Fifth Amendment of the United States Constitution and Article III, Section 5 of the West Virginia Constitution, in response to a deposition question in a civil habeas corpus proceeding. However, the trial court may properly draw an adverse inference from the habeas corpus petitioner's silence pursuant to the privilege.

### IV. Conclusion

Based upon the foregoing, we deny the writ of prohibition.

Writ denied.

Justice SCOTT did not participate in the decision of the Court.

MAYNARD, Justice, concurring:

(Filed Dec. 16, 1999)

I concur with the majority in this case, but I would go further than the majority is willing to go. In the instant case, the defendant was apparently willing to be deposed in his habeas corpus proceeding, but at some point in the deposition refused to answer certain questions asked by the prosecutor. The defendant claimed that the prosecutor was try-

---

**3.** Discovery is not an automatic right in federal habeas corpus proceedings. Pursuant to 28 U.S.C. § 2254 Rule 6(a) (1994), the Rules Governing Habeas Corpus Cases, discovery by either the respondent or the petitioner requires a finding of good cause: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his

discretion and for good cause shown grants leave to do so, but not otherwise." *See also Bean,* 166 F.R.D. at 456; *Bracy v. Gramley,* 520 U.S. 899, 903–04, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997).

**4.** We note that in *Bean,* the petitioner had already taken the stand at his trial, so there was far less of a concern about use of his deposition in a possible re-trial. *Bean,* 166 F.R.D. at 454.

ing to get him to waive his Fifth Amendment privilege against self-incrimination and that he was asking irrelevant questions. In response, the prosecutor filed a motion to compel, and the circuit court ordered that the defendant could assert his Fifth Amendment privilege, but that adverse inferences could be drawn from his invocation of the privilege. The majority's decision upholds this ruling. While I concur with the majority's decision as far as it goes, I would go further and require the defendant to answer all questions once he waives his Fifth Amendment rights by taking the witness stand.

A criminal defendant's rights under the United States and West Virginia Constitutions can be waived. In fact, every time a criminal defendant decides to testify in a criminal case and takes the stand, he waives his Fifth Amendment witness privilege and must answer all questions propounded to him. Once he elects to testify, he cannot selectively invoke his Fifth Amendment rights and answer some questions and refuse to answer others. Oddly, the majority's decision in this case allows a criminal defendant to answer some questions in a civil habeas proceeding, yet refuse to answer others by asserting the Fifth Amendment privilege. This simply does not make sense. If a criminal defendant chooses to answer questions in a civil habeas proceeding, then he should not be permitted to assert his Fifth Amendment rights when he is asked a question that he does not want to answer for obvious reasons. To hold otherwise, as the majority does in this case, gives greater protection to a criminal defendant in a civil habeas case than he would enjoy in a criminal case. For those reasons, I write separately in the hope that a more sensible rule will someday result.