576 S.E.2d 277

STATE of West Virginia, ex rel. Stanley M. MYERS, Petitioner Below, Appellant

v.

Howard PAINTER, Warden, Mount Olive Correctional Complex, Respondent Below, Appellee.

No. 30514.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Dec. 6, 2002.

34

James T. Kratovil, Charles Town, for the Appellant.

Pamela Jean Games–Neely, Prosecuting Attorney, Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for the Appellee.

PER CURIAM:

In this appeal from the Circuit Court of Berkeley County, the appellant contends that the circuit court erred in refusing to grant the appellant a writ of habeas corpus. After reviewing the record, we conclude that the appellant was prejudiced by ineffective assistance of counsel in his underlying criminal trial. Furthermore, we find error in that the circuit judge to whom the underlying criminal case was assigned deemed himself disqualified and then improperly appointed another circuit judge to hear the case.

We reverse the circuit court's order denying the appellant's requested writ of habeas corpus, grant the writ, and remand the appellant's case for a new trial.

I.

The appellant, Stanley M. Myers, was convicted by a jury in June 1996 of three counts of first degree sexual assault and one count of third degree sexual assault. In February 1997, the appellant was sentenced to an indeterminate sentence of not less than fifteen nor more than thirty-five years on each of the first three counts, and one to five years on the fourth count. The sentences are to run consecutively. The appellant appealed his conviction to this Court, but the petition for appeal was refused.

The appellant then filed in the circuit court the instant petition for a writ of habeas corpus directed to the appellee, Howard Painter, the warden of the correctional facility where the appellant is incarcerated.[1] The appellant asserted that he was entitled to the writ because, *inter alia*, he had been denied the effective assistance of counsel at trial, and had been denied the ability to participate in several critical stages of his case. The appellant also asserted he was entitled to the writ

---

**1.** This habeas corpus case was previously before the Court on a discovery matter. *See State ex rel.* *Myers v. Sanders*, 206 W.Va. 544, 526 S.E.2d 320 (1999).

because the circuit judge originally assigned to the case—Judge Christopher C. Wilkes—recused himself, and then improperly transferred the matter to another judge in the same circuit, Judge Thomas W. Steptoe, Jr.[2]

In an order dated March 27, 2001, the circuit court denied the petition for a writ of habeas corpus. The circuit court ruled that the appellant received effective assistance of counsel, and that the intra-circuit transfer of the appellant's case conformed to then-existing administrative rules regarding the disqualification and assignment of replacement judges. It is this order by the circuit court that we review in the instant case; we present the pertinent facts in the body of our discussion.

## II.

### A.

The appellant challenges the circuit court's conclusion that he received effective assistance of counsel at trial.

■ As we stated in *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995), "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially." *See also*, Syllabus Point 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975) ("Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong.").

■ This Court has recognized that the Sixth Amendment to the *Constitution of the United States* and Article III, § 14, of the *Constitution of West Virginia* not only assure the "assistance of counsel" to a defendant in a criminal proceeding but also assure that such a defendant receives competent and effective assistance of counsel. As stated in *Cole v. White*, 180 W.Va. 393, 395, 376 S.E.2d 599, 601 (1988): "The right of a criminal defendant to assistance of counsel includes the right to effective assistance of counsel." *See State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 167, 342 S.E.2d 127, 133 (1986); *State ex rel. Wine v. Bordenkircher*, 160 W.Va. 27, 30, 230 S.E.2d 747, 750 (1976); *State ex rel. Favors v. Tucker*, 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied*, 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958); *State ex rel. West Virginia–Pittsburgh Coal Co. v. Eno*, 135 W.Va. 473, 482, 63 S.E.2d 845, 850 (1951).

■ Claims of ineffective assistance of counsel are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and subsequently adopted by this Court in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In Syllabus Point 5 of *Miller*, we stated:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Failure to meet the burden of proof imposed by either part of the *Strickland / Miller* test is fatal to a habeas petitioner's claim. *Daniel*, 195 W.Va. at 321, 465 S.E.2d at 423.

■ The first prong of this test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assis-

**2.** We note that because Judge Steptoe was unavailable for the trial date, and because of speedy trial considerations, the Chief Justice of this Court appointed Judge Andrew N. Frye to preside over the appellant's criminal trial. However, Judge Steptoe presided over various pretrial matters in the criminal case, and also presided over the instant habeas corpus proceeding.

tance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. The petitioner's burden in this regard is heavy, as there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." 466 U.S. at 689, 104 S.Ct. at 2065. In Syllabus Point 6 of *Miller*, we further explained that:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

The *Strickland* Court pointed out that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. This Court has likewise emphasized that counsel's strategic decisions must rest upon a reasonable investigation:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

Syllabus Point 3, *State ex rel. Daniel v. Legursky*. "Courts applying the *Strickland* standard have found no difficulty finding in-effective assistance of counsel where an attorney neither conducted a reasonable investigation, nor demonstrated a strategic reason for failing to do so." *Daniel*, 195 W.Va. at 320, 465 S.E.2d at 422 (citation omitted).

The second or "prejudice" requirement of the *Strickland / Miller* test looks to whether counsel's deficient performance adversely effected the outcome in a given case. Furthermore, prejudice must only be proven by a preponderance of the evidence:

> One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence.

Syllabus Point 22, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

The appellant has identified a number of separate acts and omissions, several of which we discuss below, where he contends the conduct of his trial counsel was deficient. He argues that there is a reasonable probability that in the absence of these acts and omissions, taken together, the outcome of his trial would have been different.

The appellant points to the fact that written psychological profiles of the victims were prepared and placed under seal in the circuit court file prior to trial, but that copies of the profiles were never provided to the appellant. The circuit court apparently noted at a hearing that some of the information contained in the profiles was inconsistent with prior statements given by the victims. When the appellant's trial counsel asked the prosecutor for a copy of these profiles, the prosecutor allegedly refused to provide the records, and then the appellant's counsel took no further action to obtain these profiles.

In *State v. Allman*, 177 W.Va. 365, 352 S.E.2d 116 (1986), this Court approved a procedure whereby criminal defense attorneys may apply to the circuit court to obtain a copy of the confidential psychiatric profile of a victim, and designate in an *in camera* hearing relevant portions of the profile. We stated in *Allman* that:

> . . . upon remand a copy of the grand-daughter's psychiatric records should be provided to the defendant's counsel and an

in camera hearing held as to relevancy. In the hearing, the defense counsel shall designate what parts of the record he believes to be relevant. The court shall then accept arguments as to the relevancy from both sides, and a record shall be made of all proceedings. All material found to be irrelevant shall be sealed, but kept with the record.

177 W.Va. at 368–69, 352 S.E.2d at 119–20.

■ The appellant's trial counsel did not pursue the process set forth in *Allman*, and thus did not obtain copies of the victims' psychological profiles. The State contends that this was a strategic decision by the appellant's trial counsel, because the profiles contained information that is adverse to the appellant, and that trial counsel would not have wanted introduced into the trial. However, we cannot discern how trial counsel could have made such a strategic decision without first obtaining copies of the profiles, nor can we discern how trial counsel's obtaining copies of the profiles—copies which the State already possessed—would have required their admission into evidence.

■ The appellant also argues that his trial counsel failed to assure the appellant's presence at critical stages of the proceedings, and failed to ensure that a record of those proceedings was made. We have held that a criminal defendant has a constitutional right to be present at all "critical stages" of his case, and when he is not, the State bears the burden of proving beyond a reasonable doubt that what transpired was harmless. As we stated in Syllabus Point 6 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), "[t]he defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." "A critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." Syllabus Point 2, *State v. Tiller*, 168 W.Va. 522, 285 S.E.2d 371 (1981).

The appellant contends that his trial counsel attended a hearing without the appellant on March 7, 1996, and incorrectly indicated that the appellant had consented to a continuance of the March 11 trial date. The appellant says he in fact was not informed that a hearing was scheduled or that a continuance was being contemplated. There is no record of the continuance hearing, and it is difficult to assess the hearing's impact on the appellant's rights. We have stated that "[b]ecause of the impact of the right to a speedy trial, matters surrounding a continuance should require the presence of the defendant." *State v. Boyd*, 160 W.Va. at 246, 233 S.E.2d at 719 (1977).[3]

The appellant also contends that during the trial, a bailiff spoke with a sitting juror who indicated that he had recognized an important State witness was a former neighbor. The bailiff apparently related the juror's story to the circuit judge, and thereafter some discussion of the matter was had during a bench conference with the appellant's counsel and the prosecutor. The appellant did not participate in this discussion; he asserts this was because his trial counsel never informed him of his right to participate.

The bench conference was not transcribed, and apart from the recollections of the attorneys there is nothing in the trial record to indicate the conference ever occurred. When the appellant's trial counsel raised the issue in post-trial hearings, the circuit court indicated no recollection of the event, and in the absence of a record, counsel was constrained from arguing that the juror's presence on the panel was prejudicial.

In *State v. Barker*, 176 W.Va. 553, 346 S.E.2d 344 (1986) (*per curiam* ), we indicated that a circuit judge's communication with a juror was a "critical stage" where a criminal defendant was entitled to be present. We held similarly in *State v. Hicks*, 198 W.Va. 656, 482 S.E.2d 641 (1996) (*per curiam*) that communications by a court clerk with a juror were improper in the absence of a criminal

---

**3.** The appellant also contended, before the circuit court and this Court, that he was denied his right to a speedy trial. After examining the record and the arguments of the parties, we decline to address this issue.

defendant. Appellant's trial counsel apparently participated in a discussion with the circuit court about communications with a juror, but made no effort to have the appellant participate in the discussion or to have a record made of the proceedings.

Furthermore, the appellant's trial counsel failed to develop a record, during the course of the trial, of the evidence surrounding the juror's knowledge or relationship to the victims or the appellant. The appellant asserts that his trial counsel's failure to request an on-the-record *voir dire* of the juror in question precluded the appellant from having a potentially biased juror removed from the jury. See *State ex rel. Daniel v. Legursky*, 195 W.Va. at 323, 465 S.E.2d at 427 (holding that trial counsel's failure to investigate allegations of jury tampering, and failure to request a hearing to evaluate any prejudice on the defendant and to develop a record, was unreasonable and "f[e]ll outside the range of professionally competent assistance").

Additionally, at a pretrial hearing several days before the trial date, Judge Wilkes held an *in camera*, off-the-record meeting without the appellant being present to discuss the possibility of Judge Wilkes being disqualified from hearing the appellant's case. As a result of this meeting, Judge Wilkes was replaced by another circuit judge from the same circuit, and the appellant's trial was delayed. We find no reasonable justification for trial counsel's failure to ensure that the appellant participated in this meeting, or to ensure that a record was created.

Taken cumulatively, after a careful review of these and other acts and omissions identified by the appellant in the record, we find that the performance of the appellant's trial counsel was deficient. The actions and omissions of the appellant's trial counsel were outside the range of reasonable professional judgment, and taken together prejudiced the appellant's ability to obtain a fair trial. The circuit court's holding otherwise was therefore in error.

**4.** Apparently, the mother of one of the victims was an employee of the Judge's wife's brother. The Judge's wife had made some pre-indictment

**B.**

The appellant also challenges the circuit court's conclusion that there was no error or prejudice in the transfer of his criminal case from Judge Wilkes to Judge Steptoe. The appellant contends that the method by which his case was transferred was improper under the procedures established in the West Virginia Trial Court Rules, and that therefore any orders entered by Judge Steptoe were void.

After the appellant was indicted, his case was assigned to Judge Wilkes. Trial was scheduled for September 28, 1995; but at a September 21 pre-trial hearing, Judge Wilkes indicated that he had been inadvertently exposed to facts regarding the case.[4] Judge Wilkes then held an *in camera*, off-the-record hearing, without the appellant being present. There is no written or oral motion contained in the record requesting Judge Wilkes to recuse himself from the case, but an order entered by Judge Wilkes on November 2, 1995, indicates that the State, "joined by counsel for the Defendant," moved the circuit court to recuse itself. Judge Wilkes concluded "that out of an abundance of caution" he should grant the motion and recuse himself "from presiding further in these proceedings[.]" Finally, the order stated that the case "is hereby referred to the Honorable Thomas Steptoe ... for all further proceedings to be had herein."

The Supreme Court of Appeals is constitutionally empowered to enact administrative rules regarding the temporary assignment of circuit judges when another circuit judge is disqualified. We stated, in Syllabus Points 1 and 2 of *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977):

1. Under Article VIII, Section 8 of the *Constitution of West Virginia* (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them.

reference of the matter to the Judge, which the Judge recalled when he saw the victim's mother in court at the pre-trial hearing.

2. The administrative rule promulgated by the Supreme Court of Appeals of West Virginia, setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge, operates to supersede the existing statutory provisions found in W.Va.Code, 51–2–9 and –10 and W.Va. Code, 56–9–2, insofar as such provisions relate to the selection of special judges and to the assignment of a case to another circuit judge when a particular circuit judge is disqualified.

The Court adopted Trial Court Rule XVII [1993] to establish a formal system for the disqualification and temporary assignment of judges.[5] The rule established that motions by a party to disqualify a judge must be in the form of a "written motion." Rule XVII(a). If the circuit judge agreed to disqualify himself or herself in response to the written motion, and the parties agreed upon a particular replacement judge, the rule required the judge to contact the administrative director of the Supreme Court of Appeals, who would then communicate with the chosen replacement judge. Contact by the parties or circuit judge with the replacement judge was prohibited, and any assignment of the case to another judge was to be done solely by the Chief Justice. Rule XVII(a)(2) stated, in pertinent part:

> If concurrence can be reached ... the judge shall forthwith contact the Administrative Director, who shall then contact the judge to whom assignment is requested. Contact with the judge to whom assignment is requested by either the recused judge or the parties is prohibited. If the judge to whom assignment is requested consents, all parties shall sign a written stipulation designating a new judge. The original judge shall forthwith transmit the motion .. and stipulation to the Chief Justice, who shall ... in writing approve or disapprove the recusal and stipulation.

Conversely, if the circuit judge refused a parties' written motion to recuse him-or herself, or the parties disagreed as to the replacement judge to whom the case should be assigned, or the chosen replacement judge declined to accept the case, the case was required to be forwarded to the Chief Justice for assignment. Again, the recused judge was prohibited from acting until the Chief Justice reviewed the case. Rule XVII(a)(3) stated, in pertinent part:

> If concurrence cannot be reached, if the original judge does not agree to recuse himself or herself, or if the designated judge does not consent, then the judge shall:
>
> (A) Proceed no further in the matter; and
>
> (B) Transmit forthwith to the Chief Justice a copy of the motion ... asking that the Chief Justice rule on the motion[.]

If a circuit judge wanted to voluntarily recuse himself or herself in the absence of a disqualification motion, two different approaches could be taken, depending upon whether the judge was in a single-judge or multi-judge circuit. If a circuit judge in a single-judge circuit wanted to voluntarily recuse himself or herself, the judge was required to send a letter to the Chief Justice stating why recusal was necessary and asking the Chief Justice to rule on the issue. Rule XVII(b) stated, in pertinent part:

> In the absence of a disqualification motion's having been filed ... a judge wishing to recuse himself or herself voluntarily shall so inform the parties and shall proceed pursuant to the applicable provisions of section (a) ... above[.]

However, if a circuit judge in a multi-judge circuit wanted to recuse himself or herself, the judge could do so and the case would be reassigned to another judge in the same circuit—so long as it was done prior to a party's filing a motion asking that the judge recuse himself or herself from hearing the case. Rule XVII(d) stated:

---

**5.** The version of Trial Court Rule XVII at issue in this case was adopted in 1993. Rule XVII was amended in 1996, and was later superseded by new Trial Court Rules adopted by the Court in 1999. The rules regarding disqualification and temporary assignment of judges may now be found at Trial Court Rules 17.01 to 17.08. However, no changes were made that affect the instant case, and the procedure we discuss in the body of the opinion remains substantially the same today.

The preceding provisions of this rule do not apply to the assignment or reassignment of cases within a multi-judge circuit previous to the filing of a motion for disqualification.

In other words, in the absence of a motion to disqualify, cases may be reassigned to another judge in a multi-judge circuit without involvement of the Chief Justice; however, once a motion to disqualify is filed, judges must cease from taking further action in the case and forward the recusal issue to the Chief Justice for reassignment to another judge under Rule XVII (a) and (b).

We stated in Syllabus Point 3 of *Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977) that the failure to follow the Court's administrative rules pertaining to the assignment of a successor judge to replace a disqualified judge will render the appointment of the successor judge void:

> The failure to follow the procedures contained in the administrative rule relating to the temporary assignment of a circuit judge to a case, where the existing circuit judge is disqualified, will render the appointment of such temporary judge void, and a writ of prohibition will lie to prevent his exercising jurisdiction over the case.

In *Stern Brothers*, attorneys filed a motion asking a circuit judge to disqualify himself. The circuit judge agreed to recuse himself, and then assigned the case to a fellow judge in the same circuit. When the attorneys objected to the fellow judge's appointment—because the fellow judge had previously been an associate in the attorneys' firm—the circuit judge chose and appointed a judge from another circuit. We held in *Stern Brothers* that once the circuit judge decided to recuse himself on the motion of the parties, he had no authority over the case, and any subsequent attempts to appoint another judge were void. We also held that because the circuit judge failed to follow the administrative rules promulgated by this Court regarding the assignment of temporary judges, the appointment of the successor judge was void.

In the instant case, while the court's order says that Judge Wilkes recused himself on the motion of the parties, there was no written motion filed as required by Rule XVII. Once Judge Wilkes decided to recuse himself, if upon a motion by the parties—as suggested by the November 2, 1995 order—he had no additional authority over the case. Under Rule XVII, Judge Wilkes should have forwarded the case to the Chief Justice for the assignment of a replacement judge. Instead, Judge Wilkes entered the order assigning the case to Judge Steptoe for further proceedings.

The circuit court in the instant habeas case concluded that the transfer of the case to Judge Steptoe was proper because the appellant's criminal case was merely reassigned within a multi-judge circuit, in accordance with Rule XVII(d). This reasoning, however, overlooks the circuit court's own finding of fact that "[t]he State and [appellant] jointly moved at hearing for Judge Wilkes' recusal," and overlooks Rule XVII's requirement that once a motion was made for Judge Wilkes to recuse himself from the appellant's case, he was bound to follow the procedures contained in Rule XVII(a) and (b). However, this action would have been proper, had the recusal been *sua sponte* without any motion by a party.

As we made clear in *Stern Brothers*, Judge Wilkes' appointment of Judge Steptoe, made in a manner contrary to the dictates of Rule XVII, was void and beyond Judge Wilkes' authority. While Judge Steptoe was not guilty of any impropriety, his appointment was contrary to the established rules designed to ensure that judicial decisions are both free from bias, and free from all appearance of bias. The circuit court was therefore incorrect in its finding that there was no error.

### III.

As set forth above, we find that the appellant was denied effective assistance of trial counsel. We further find that Judge Wilkes' appointment of Judge Steptoe was void. On this basis, we reverse the circuit court's order denying the appellant's requested writ of habeas corpus, and remand the case for a new trial.

*Reversed and Remanded.*