**STATE OF WEST VIRGINIA**

**Latasha Kanode,**
**Petitioner Below, Petitioner**

**vs.) No. 19-0113** (Mercer County 17-C-329)

**J.D. Sallaz, Superintendent, Lakin**
**Correctional Center,**
**Respondent Below, Respondent**

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Latasha Kanode, by counsel Dana P. McDermott, appeals the January 7, 2019, order of the Circuit Court of Mercer County denying her petition for a writ of habeas corpus. Respondent J.D. Sallaz, Superintendent, Lakin Correctional Center, by counsel Scott E. Johnson, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her ineffective assistance of counsel claims and finding that she was not denied equal protection.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2013, law enforcement found the victim, Sherry Matthews, deceased after suffering two gunshot wounds in her home in Princeton, West Virginia. Law enforcement also located a second victim, Edward Thomas, who had been shot in the face, but survived. Mr. Thomas identified petitioner and Steve MacDonald as the perpetrators of the shooting and advised that they fled in a dark-colored Dodge Dakota truck. Mr. Thomas stated that Mr. MacDonald worked at the "Elks Club." Law enforcement responded to the Elks Club and found Mr. MacDonald and his dark-colored Dodge Dakota. During questioning, Mr. MacDonald informed law enforcement that he had been at Ms. Matthews's residence with petitioner to purchase controlled substances, but asserted that petitioner discharged the firearm while he was outside of the residence. Law enforcement searched the vehicle, but did not recover any evidence of the crime. Mr. MacDonald told law enforcement that he disposed of the weapon.

Petitioner's family learned that Mercer County law enforcement was searching for her, and her father transported her from Monroe County, West Virginia, to Mercer County for questioning. During a recorded interview, petitioner admitted that she and Mr. MacDonald discussed robbing and murdering Ms. Matthews the night prior to the murder. Petitioner admitted that they traveled to Ms. Matthews's home on the pretense of purchasing controlled substances, but, once they entered Ms. Matthews's bedroom, it was Mr. MacDonald who shot and killed Ms. Matthews while petitioner removed a sum of $11,093 from her body and fifteen Dilaudid pills from the home. Petitioner stated that they shot Mr. Thomas as they left the residence. Mr. MacDonald later provided a confession consistent with petitioner's statements to law enforcement.

In October of 2013, petitioner was indicted on five counts: first-degree murder of Ms. Matthews; attempted first-degree murder of Mr. Thomas; one count of first-degree robbery; conspiracy to commit a felony; and possession of a firearm by a prohibited person. Petitioner filed a motion to suppress her statement to law enforcement, and the circuit court held an evidentiary hearing in December of 2013. The State called Major D.B. Bailey who testified that petitioner was advised of and waived her *Miranda*[1] rights. Major Bailey testified that petitioner was not promised anything, threatened, or coerced into making her statement. Further, Major Bailey recalled that petitioner informed him she had taken the fifteen Dilaudid pills in the twelve hours since the murder, but asserted that she did not appear under the influence during the interview. Major Bailey confirmed that petitioner did not appear nervous or "bouncing all around," did not appear to be suffering from withdrawal symptoms, and did not appear to be in any discomfort during the interview. Petitioner presented no evidence. Ultimately, the trial court denied petitioner's motion to suppress her statement, finding that petitioner's statement was knowingly, intelligently, and freely given. Specifically, the court acknowledged petitioner's "drug problem," but found that "she, from the testimony of the officer, [didn't] appear to have been impacted to the point that she couldn't understand what she was doing when she, A, waived her rights and then B, gave her statement."[2]

In February of 2014, petitioner pleaded guilty to first-degree murder, attempted first-degree murder, first-degree robbery, and conspiracy. In exchange for her guilty plea, the State agreed to a binding plea agreement, pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, for the first-degree murder conviction to be incarcerated for life with mercy and for the first-degree robbery conviction to be incarcerated for a maximum twenty-year sentence. Pursuant to this agreement, petitioner's charge of possession of a firearm by a prohibited person would be dismissed. The trial court asked petitioner if she understood the terms of this agreement, and she asserted that she did. The trial court further informed petitioner of her constitutional rights, such as the waiver of any pretrial and non-jurisdictional defects in the case, and petitioner asserted that she understood that she was waiving those rights. Ultimately, the trial court found that petitioner was "capable of entering a plea; that she understands her constitutional rights; and that there [was] a basis for her plea." The court accepted petitioner's plea of guilty.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]The Court notes that the quoted section is the trial court's oral findings made during the evidentiary hearing on petitioner's motion to suppress. Petitioner did not include the trial court's order denying petitioner's motion to suppress in the record on appeal.

In March of 2014, the trial court sentenced petitioner to a life sentence with mercy for her first-degree murder conviction; a determinate twenty-year sentence for her first-degree robbery conviction; an indeterminate three- to fifteen-year sentence for her attempted first-degree murder conviction; and an indeterminate one- to five-year sentence for her conspiracy to commit a felony conviction. The trial court ordered petitioner's sentences to run consecutively. The court's sentencing order was entered March 27, 2014. Petitioner did not appeal this order.

Petitioner filed a petition for a writ of habeas corpus in August of 2017. Among the grounds raised was ineffective assistance of counsel in suppressing petitioner's statement and inadequately informing petitioner of her constitutional rights prior to the plea hearing, resulting in an uninformed guilty plea. Petitioner also asserted that she was denied equal protection during sentencing as evidenced by the twenty-year sentence for first-degree robbery that she received as compared to her co-defendant's ten-year sentence.

The habeas court held an omnibus hearing in September of 2018. Petitioner provided testimony from her trial counsel, David Smith and Philip Scantlebury, in the form of a deposition of Mr. Smith and testimony from Mr. Scantlebury at the omnibus hearing. Petitioner testified and also called as witnesses her codefendant, Mr. MacDonald; her step-mother, Amanda Kanode; and the former Mercer County prosecuting attorney, Scott Ash. In regard to her ineffective assistance of counsel claim, petitioner testified that she had taken four Dilaudid pills forty minutes prior to her interview with law enforcement. She further testified that, when using the pills, she would be "itchy," "forgetful, sometimes," "start to nod," and experience a lost "train of thought." However, trial counsel admitted that they failed to investigate whether petitioner was intoxicated at the time of her interview and exactly how intoxicated she was.

Regarding petitioner's claim that she received ineffective assistance of counsel at her plea hearing, she testified that she did not understand certain phrases used during the plea colloquy, such as "pretrial defects" and "non-jurisdictional defects." Further, Mr. Scantlebury admitted during his testimony that he did not explain these specific terms to petitioner. The State admitted a letter written by petitioner prior to sentencing, which began, "I am writing on behalf of my sentencing and my plea. I did understand the plea I took and was aware of the time each sentence held." Finally, in addressing the equal protection claim, petitioner presented evidence that she was unaware of her co-defendant's first-degree robbery sentence at the time of her plea hearing. Additionally, the former prosecuting attorney testified that he could not remember the justification for the plea offer that exposed petitioner to a twenty-year first-degree robbery sentence. However, he also testified that, based on his experience and reviewing the plea offers, he expected that petitioner was more culpable. Ultimately, the habeas court denied petitioner's petition for a writ of habeas corpus on all grounds by its January 7, 2019, order. Petitioner now appeals that order.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the

underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

Petitioner assigns as error the circuit court's failure to grant her habeas relief on her two ineffective assistance of counsel claims. First petitioner claims the court erred in denying her relief where trial counsel failed to fully investigate her mental state at the time of her confession to law enforcement, and, as a result, counsel was unaware of her degree of intoxication. Petitioner asserts that she ingested four Dilaudid pills forty minutes before the interview with Major Bailey. According to petitioner, if counsel had been aware of her intoxication and raised this fact during the suppression hearing, there would have been a reasonable probability that her statement to law enforcement would have been suppressed.

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016). "Failure to meet the burden of proof imposed by either part of the *Strickland / Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Myers v. Painter*, 213 W. Va. 32, 35, 576 S.E.2d 277, 280 (2002) (citation omitted). In regard to counsel's investigation during a case, we have held

> [t]he fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

*Myers*, 213 W. Va. at 34, 576 S.E.2d at 279, syl. pt. 4 (internal citation omitted).

Contrary to petitioner's assertion that counsel was unaware and failed to raise her intoxication during the suppression hearing, it is clear that petitioner's lucidity during the interview was a point of utmost concern. Critical to this analysis, this Court has held "[a] claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive [her] rights, the confession will not be rendered inadmissible." Syl. Pt. 1, *State v. Hall*, 174 W. Va. 599, 328 S.E.2d 206 (1985). Here, petitioner's drug use on the day of the interview was clearly

raised. In response to counsel's statement that petitioner "was on drugs" at the time of the interview, Major Bailey acknowledged that petitioner informed him that "she had taken [the] drugs that she had robbed from Ms. Matthews." However, Major Bailey testified unequivocally that petitioner did not appear under the influence during the interview. The trial court asked a follow-up question, "[s]o she didn't appear to be under the influence of anything when you did this [interview]?" Again, Major Bailey responded, "No, sir. Not at all." Clearly, petitioner's assertion on appeal, that the trial court would have ruled differently if only counsel had disclosed the *timing* and the *amount* of Dilaudid she had taken that day, is baseless. There is no evidence that Major Bailey's observations of petitioner would not have been the same. Moreover, during the omnibus hearing, petitioner's described side effects of Dilaudid did not suggest that her judgment was impaired or that she was more easily persuaded due to intoxication. Rather, petitioner suggested the drug may have caused her to be forgetful, lose her train of thought, or experience drowsiness.

To support her argument, petitioner relies on this Court's opinion in *State ex rel. Strogen v. Trent*, 196 W. Va. 148, 469 S.E.2d 7 (1996), which we find to be distinguishable from this case. In *Strogen*, the defendant was read his *Miranda* rights and transported via a forty-five minute car ride to the Houston Airport. During the car ride, Strogen agreed to provide a taped confession to his crimes. After reviewing the case, Strogen's counsel asserted that no grounds existed to suppress the confession. After Strogen filed a petition for a writ of habeas corpus, however, he asserted that the custodial detectives threatened and coerced him into providing the confession, despite his earlier assertions that he would remain silent. Petitioner's counsel admitted that he was unaware of the threats and had not investigated them, and, as a result, this Court reversed and remanded the case. Unlike *Strogen* though, petitioner's counsel was well aware of her intoxication and, during the suppression hearing, properly questioned Major Bailey regarding petitioner's lucidity during the interview. Therefore, we do not find a reasonable probability that petitioner's statement would have been suppressed had counsel known the exact nature of petitioner's intoxication.

Next, petitioner claims that the circuit court erred in finding that counsel did not render deficient representation in advising her prior to the entry of her plea. Due to counsel's ineffectiveness, petitioner asserts, she was unaware of the meaning held by certain legal terminology, such as "pretrial errors" and "nonjurisdictional errors," and, therefore, did not knowingly and intelligently enter her plea. However, we find this argument unpersuasive on appeal.

We have previously held

> [a] habeas petitioner may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 11 of the West Virginia Rules of Criminal Procedure only by establishing that the violation constituted a constitutional or jurisdictional error; or by showing that the error resulted in a complete miscarriage of justice, or in a proceeding inconsistent with the rudimentary demands of fair procedure. Moreover, the petitioner must also demonstrate that [s]he was prejudiced in that [s]he was unaware of the consequences of [her] plea, and, if properly advised, would not have pleaded guilty.

Syl. Pt. 10, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). Here, petitioner fails to show that she was improperly advised or that she was unaware of

the consequences of her plea. During her plea hearing, the trial court informed petitioner of the constitutional rights waived by entering a guilty plea, including a waiver of any "pretrial error" or "nonjurisdictional errors." Petitioner indicated that she understood these rights and that they would be waived. The trial court further asked petitioner if she had "any questions at all about [her] proposed guilty plea, the plea agreement, [her] rights or anything else," and she responded "No, Your Honor." We recently noted "statements made at plea allocutions 'carry a strong presumption of verity' and 'constitute a formidable barrier' in a subsequent collateral proceeding." *Montgomery v. Ames*, 241 W. Va. 615, 626, 827 S.E.2d 403, 414 (2019) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Further, in petitioner's letter to the court prior to sentencing, she again confirmed that she did "understand the plea [she] took and was aware of the time each sentence held." Accordingly, she has failed to show that she misunderstood the terms or that knowledge of the terms would have caused her not to plead guilty.[3] As such, we find petitioner is entitled to no relief in this regard.

Finally, petitioner asserts that she suffered a denial of equal protection on the basis of her gender. She argues that any different treatment of women relative to men in state statutes must have a rational basis, subject to "increased scrutiny." *See Reed v. Reed*, 404 U.S. 71 (1971); *see also Craig v. Boren*, 429 U.S. 190 (1976). Petitioner asserts that comparing her twenty-year first-degree robbery sentence to her codefendant's ten-year sentence for the same crime is a clear indication of a violation of equal protection. Petitioner emphasizes that Mr. MacDonald testified that the robbery was "99.95" percent his idea and that he formulated the idea after Ms. Matthews refused to provide petitioner a Dilaudid pill without payment. Mr. MacDonald also testified that petitioner was likely unaware that he brought the gun with him to the robbery. According to petitioner, Mr. MacDonald's testimony shows that he was more culpable in the commission of this crime. We disagree.

> "Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone." Syllabus point 2, *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984).

Syl. Pt. 6, *State v. Booth*, 224 W. Va. 307, 685 S.E.2d 701 (2009). As petitioner acknowledges, state statutes are subject to "increased scrutiny" when different treatment occurs between women and men. However, the "increased scrutiny" standard is inapplicable because a state statute did not prescribe the sentences at issue. Rather, the trial court ordered the first-degree robbery sentence in accordance with the applicable statute and within the bounds of petitioner's plea agreement with the State. Moreover, petitioner fails to acknowledge that Mr. MacDonald's testimony is directly contradicted by her own statement to law enforcement that she and Mr. MacDonald planned the

---

[3]Additionally, petitioner did not argue that, if counsel had explained the terms "pretrial error" and "nonjurisdictional error," she would not have pleaded guilty. Petitioner asserted no errors that she would have litigated if not for her misunderstanding or that those errors, if litigated, would have been meritorious. Accordingly, petitioner failed to carry her burden in showing that any ineffective assistance of counsel, if proven, prejudiced her.

robbery the night before and that she knew he planned to have the gun at the robbery. Further, petitioner was arguably the primary motivator and benefited the most from the robbery as Mr. MacDonald testified that he was clean from controlled substances at the time of the crime, but was motivated to commit the crime because petitioner was suffering from withdrawals. After the robbery, petitioner used all of the pills taken from Ms. Matthews's home and kept the money obtained from the robbery. Thus, petitioner was more culpable for the commission of the crime, as theorized by the former prosecuting attorney during the omnibus hearing. Considering these factors, we find no error in the circuit court's denial of petitioner's equal protection claim.

For the foregoing reasons, the circuit court's January 7, 2019, order denying petitioner's petition for a writ of habeas corpus is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison