**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel.**
**Jamel Kahalid Mitchell,**
**Petitioner, Defendant Below**

**FILED**

**October 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 18-0714** (Kanawha County 15-P-109)

**Robin Miller, Superintendent,**
**Huttonsville Correctional Center,**
**Respondent, Plaintiff Below**

**MEMORANDUM DECISION**

Petitioner Jamel Kahalid Mitchell, by counsel Charles R. Hamilton, appeals the Circuit Court of Kanawha County's May 22, 2018, final order denying his petition for writ of habeas corpus. Respondent State of West Virginia, by counsel Holly M. Flanigan, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 25, 2018, petitioner and Aaron Williams ("the victim") were at the home of a mutual friend when petitioner asked the victim for a ride home and the victim agreed. Petitioner and the victim were the only persons in the vehicle at the time in question, with the victim driving and petitioner riding as a front seat passenger. When they arrived at the home petitioner identified as his, the victim stopped the vehicle and waited for petitioner to exit. As the victim was waiting, petitioner shot him twice in the face.

Petitioner contends that the victim attempted to rob him, causing him to shoot the victim. However, the victim denied attempting to rob petitioner. The victim stated that there were no disagreements or arguments between the men and that petitioner "said nothing to him," just simply shot him. It is undisputed that after the shooting both men exited the vehicle. The victim recalled getting out of the vehicle, walking to an adjacent roadway, and later waking up in the hospital. Less than ten minutes after the victim exited the vehicle, petitioner returned to the vehicle, allegedly to ensure that the victim was dead. When he did not observe the victim, petitioner drove the vehicle from the scene and, ultimately, to Philadelphia, Pennsylvania. It was later discovered

1

that petitioner "did not like the victim" because the victim was related to an individual who reportedly shot petitioner's friend. Petitioner allegedly made representations, some time prior to the incident at issue, that he intended to kill the victim.

Thereafter, petitioner was indicted on charges of first-degree robbery, attempted first-degree murder, and malicious wounding. A jury trial on petitioner's charges commenced on February 23, 2009. Petitioner did not testify at trial. During the trial, the circuit court engaged in "the required colloquy" with petitioner to determine whether he wished to testify. Petitioner, then 19 years of age, was noted by the circuit court as being literate, having his General Education Development Certification ("GED"), and having an understanding of the charges against him. The court noted that petitioner was "engaging, actively, with his counsel throughout the trial" and was "an active participant in his defense." During the colloquy, the court advised petitioner that the decision to testify was his choice alone. Petitioner acknowledged his rights and chose not to testify. During trial, petitioner's counsel, William Lester, argued that petitioner acted in self-defense "and necessity in taking the vehicle," as opposed to taking the vehicle with the intent to steal. The State argued against self-defense and necessity. Ultimately, petitioner was found guilty of each of the charges against him. A special interrogatory was submitted to the jury, and the jury determined that petitioner used a firearm in the commission of these offenses. Petitioner was sentenced to serve forty years of incarceration on the robbery charge, three to fifteen years for attempted first-degree murder, and two to ten years for malicious wounding.

Petitioner filed a direct appeal of his conviction, which was affirmed by this Court in *State v. Mitchell*, No. 101577, (W.Va. Apr. 18, 2011) (memorandum decision). On March 20, 2015, petitioner, pro se, filed his petition for writ of habeas corpus. Counsel was appointed for petitioner and a supplemental petition was filed on petitioner's behalf on June 24, 2016.[1] In his habeas petitions, petitioner asserted that his trial counsel was ineffective in several respects: (1) in coercing petitioner not to testify and creating a self-defense defense; (2) in failing to establish that the victim's car was not in the lawful possession of petitioner; (3) in failing to move for a judgment of acquittal on the robbery charge; and (4) in failing to present the theory that petitioner committed larceny of the vehicle rather than robbery.

An omnibus hearing on petitioner's habeas petitions was held on December 6, 2016. Petitioner testified, but no other witnesses were called on his behalf. Petitioner's trial counsel was then a fugitive from justice, having been indicted on several charges unrelated to the instant case. Trial counsel's whereabouts were unknown at the time of the omnibus hearing, but he was believed to be living outside of the United States.

By order dated May 22, 2018, the circuit court denied petitioner's requested writ of habeas corpus. The circuit court found that much of petitioner's testimony at the omnibus hearing "particularly regarding the advice, or lack thereof regarding [petitioner] testifying at trial, and the development of trial strategy lacks credulity." A review of the colloquy engaged in by the court

---

[1]At the December 6, 2016, omnibus hearing, petitioner's habeas counsel testified that once counsel was appointed for petitioner, counsel filed a supplemental writ of habeas corpus on petitioner's behalf to include "a little more law and one other claim."

and petitioner during petitioner's trial reveals that petitioner was advised multiple times that the decision to testify, or not, was his and his alone. Accordingly, the circuit court determined that petitioner's trial counsel was not ineffective regarding petitioner's decision not to testify. Petitioner did not sustain his burden demonstrating that the advice given to him regarding testifying was "objectively unreasonable" or that, if he had testified, "the outcome of the trial would have been different." *See State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

The remainder of petitioner's claims regarding the alleged ineffectiveness of his trial counsel relate to petitioner's robbery conviction. Petitioner is critical of his counsel's failure to move for dismissal of the robbery charge for a defect in the indictment (related to the victim's presumed lawful possession of the vehicle); counsel's failure to move for a judgment of acquittal; and counsel's failure to present a theory that petitioner's actions in leaving the scene of the crime in the victim's vehicle was a larceny rather than robbery. The court found that the indictment was "facially sufficient" and that there was "more than sufficient" evidence adduced at trial regarding the victim's lawful possession of the vehicle at issue. The court further found that petitioner's trial counsel was not ineffective in not moving for a judgment of acquittal, as such motion would have been denied by the court. As to the propriety of trial counsel's actions related to presentation of evidence that petitioner committed larceny, rather than robbery, the trial court noted that there was no evidence that petitioner simply took the vehicle without the use of deadly force.[2] The court states that it is not objectively deficient performance of counsel, like petitioner's counsel here, to "fail to espouse a theory which flew in the face of the evidence." Accordingly, the circuit court found that that each of petitioner's arguments related to larceny were without merit as the same did not meet the requirements of *Miller*.

As to petitioner's contentions that his habeas counsel was ineffective in failing to call other witnesses and, in essence, failing to develop an adequate record at the omnibus hearing, the circuit court found no merit to petitioner's claims. The habeas court, which was the same court before which petitioner's underlying criminal case was tried, specifically noted that the court had "adequate information from its review of the file, including the trial transcript and all other pleadings in that file, as well as the habeas corpus matter as well as the transcript from the omnibus evidentiary hearing to make an informed decision regarding petitioner's claims of ineffective assistance of counsel." It is from the circuit court's May 22, 2018, order that petitioner now appeals.

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

---

[2] Larceny, at common law, is the taking of personal property of another against his will, with the intent to permanently deprive the owner of that property. *See* Syl. Pt. 4, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982). Robbery, at common law, is the unlawful taking of goods from another with the intent to steal the property, by force, or putting on in fear. *See Id*. at 663, 295 S.E.2d at 903.

3

Syl. Pt. 1, *State ex. rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner asserts two assignments of error. First, he argues that his habeas counsel was ineffective in calling no witnesses at the omnibus hearing other than petitioner. In his second assignment of error, petitioner argues that the circuit court abused its discretion in finding that petitioner's trial counsel was effective. Our review of the record supports the circuit court's decision to deny petitioner's petition for writ of habeas corpus as to each of petitioner's assignments of error. Petitioner's arguments presented herein were thoroughly addressed by the circuit court in its order denying petitioner habeas relief.

The circuit court's order includes well-reasoned findings and conclusions as to the assignments of error now raised on appeal. Because we find no clear error or abuse of discretion in the circuit court's order or the record before us, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised on appeal and direct the Clerk to attach a copy of the circuit court's May 22, 2018, "Findings of Fact, Conclusions of Law, and Final Order" to this memorandum decision.

For the foregoing reasons, we affirm the circuit court's denial of petitioner's petition for writ of habeas corpus.

Affirmed.

**ISSUED:** October 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

4

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2018 MAY 22 PM 3: 58

CATHY S.
KANAWHA COUNTY CIRCUIT COURT

STATE OF WEST VIRGINIA ex rel.
JAMEL MITCHELL,

Petitioner,

v.                                            Civil Action No. 15-P-109
                                              Judge Jennifer F. Bailey

MARVIN PLUMLEY, WARDEN
HUTTONSVILLE CORRECTIONAL FACILITY,

`Respondent.

FINDINGS OF FACT, CONLUSIONS OF LAW, AND FINAL ORDER

Pending before this Court is the petitioner's amended petition for writ of habeas corpus. Following a review of the entire underlying criminal file; a review of the amended petition and supporting memorandum of law, and the response; a review of the testimony and argument from the omnibus evidentiary hearing, as well as an examination of the pertinent law, this Court makes the following findings of fact, conclusions of law and final order.

I.

FINDINGS OF FACT

1. The petitioner was indicted in 08-F-393 for the felony offenses of first degree robbery, attempted first degree murder and malicious wounding.

2. The petitioner does not challenge his convictions for attempted first degree murder and malicious wounding in this habeas proceeding.

3. The case proceeded to trial. The defense proffered was that the petitioner shot the victim in self-defense; the victim having planned to rob the petitioner. (Trial Transcript, Day 2, February 24, 2009, at 26.)

1

4. Aaron Williams, the victim, was a most reluctant witness. (Id. at 29.) Nonetheless, he stated that he had borrowed a car from his uncle the night before he was shot. The night before he was shot, the victim drove the car to a club, and then to the home of Katrina Artis. (Id. at 31.) The petitioner was among other people present at the Artis' home. (Id. at 32.)

5. The victim, petitioner and Katrina Artis went to IHOP in the car that the victim had borrowed from his uncle. (Id. at 33.) The vehicle was a 2003 white Impala. (Id.)

6. The victim returned to the Artis' residence and fell asleep. (Id. at 35.)

7. The next morning the victim and the petitioner drove in the borrowed car to the east end. The petitioner was in the car when the victim was shot. (Id. at 36.) The petitioner had asked for a ride home. (Id. at 37.) The victim stopped the car, waiting for the petitioner to get out.

8. The victim then remembered being shot in the face. (Id. at 38.) The victim was shot in the car and there were no other persons in the car besides the victim and the petitioner. (Id. at 38-39.) The petitioner was sitting in the front passenger seat. (Id. at 42.)

9. The victim denied having a gun that night and denied robbing the petitioner or having any problems at all with him. (Id. at 43.)

10. After he was shot, the victim got out of the car and started walking down the road. (Id. at 44.) The next thing he remembered was waking up in a hospital in Morgantown. (Id. at 44-45.)

11. Although the victim waffled at trial, he had given a statement pre-trial stating that the petitioner had shot him. (Id. at 50.) Further, the victim's recollection was refreshed, and the victim remembered telling the police that the petitioner had shot him. (Id. at 52.) "Huh-uh. Didn't say nothing. He just shot." (Id. at 53.)

12. The pre-trial statement was played. The victim stated that the petitioner shot him, and there had been no disagreements or arguments. The victim didn't know why he'd been shot. (Id.

2

at 56.) Mr. Williams was shot two or three times, and then got out of the car and started walking. He did not know where the petitioner went. (Id. at 57.)

13. Officer Guaraldo of the Philadelphia police department processed the car the victim was driving when he was shot, which the petitioner drove to Philadelphia. (Id. at 102.)

14. Red stains were discovered on the front driver seat, the centerpiece of the steering wheel, and a "defect" found in the steering column. (Id. at 106-07.) A projectile was taken from the steering post. (Id. at 107.)

15. While the victim was still being treated near the scene where he'd been shot, he told Detective Jarl Taylor that he'd been shot by "Bucky." Detective Taylor knew that "Bucky" was the petitioner's nickname. (Id. at 124.)

16. Katrina Artis knew the victim from having dated him, and her younger sister dated the petitioner. (Id. at 132-33.)

17. She testified that there was an occasion when she, the victim, her sister, and the petitioner were at her mother's house "hanging out." (Id. at 134.) A discussion ensued about a "Mike Jones" or "Johnson." The petitioner told Ms. Artis he didn't like Jones because Jones had shot a friend. (Id. at 135.) The petitioner later stated he didn't like the victim because the victim was related to Mike Jones or Johnson. (Id. at 137.) Later, the petitioner told Ms. Artis he was going to kill the victim. (Id. at 138.)

18. Later Katrina Artis, the victim and the petitioner drove to IHOP in the victim's uncle's white car. (Id. at 139.)

19. After they returned to the Artis' residence, but before they went to sleep, "Buck" (the petitioner) asked Artis about the petitioner giving him a ride to the east end in the morning. (Id. at 140.)

3

20. Ms. Artis testified that the victim, to her observation did not have a weapon that day, but that the petitioner was armed with a black and silver gun. (Id. at 141.)

21. Approximately fifteen minutes after Mr. Williams and the petitioner left in the white car, with the petitioner driving, Ms. Artis received a phone call from the petitioner. (Id. at 142-43.) The petitioner told her he was coming to her home.

22. When he appeared, the petitioner had blood on his shoes and pants, and he told her that ". . .he killed him. He said he shot him three times in the face." (Id. at 143-44.) The petitioner was in a rush to leave and said he was leaving town. (Id. at 144.)

23. Ms. Artis stated on cross-examination that the victim believed she had ". . .set Jamel to rob him and shoot him." (Id. at 149.)

24. Janelle Artis was in school when she received a phone call from her then boyfriend "Buck", the petitioner. (Id. at 157.) She went to Philadelphia with the petitioner after the shooting. They were in "Aaron's" car, the white Impala. She was in Philadelphia for two weeks when she and the petitioner were found at the petitioner's uncle's house. (Id. at 159.)

25. The victim received two gunshot wounds to the face. The bullets went through and exited. (Id. at 173.)

26. The victim selected the petitioner's photo from an array and identified him as the person who shot him. (Id. at 184.)

27. The victim's uncle reported that his car had been stolen on January 25, 2008. (The victim was shot on January 24.) (Id. at 186, 15.)

28. David Miller from the State Police laboratory determined that samples taken from the car by the Philadelphia police department indicated human blood. (Id. at 197.)

4

29. The petitioner's mother testified that although her son had professed to her that the victim tried to rob him (Trial Transcript, Day 3, February 25, 2009, at 16.), she advised her son to hide in the attic and get out of town. (Id. at 19.) She told him to take the Impala. (Id. at 19-20.) The petitioner told her that he drove the Impala from the shooting scene to "home." (Id. at 27.)

30. Before he fled, the petitioner's mother told him the police had been at "the godmother's house." (Id. at 30.) She hid the petitioner in the attic because she knew the police would be coming to her house. (Id.)

31. After the mother's testimony, the petitioner engaged in the required colloquy with the court to determine whether or not he wished to testify. The petitioner was 19, and had his GED. He could read and write, understood what he'd been charged with and agreed with the court's statement that "...Mr. Lester and you have reviewed what the State would have to establish beyond a reasonable doubt to the satisfaction of a jury before you can be convicted of any of those offenses, is that right?" (Id. at 36.)

32. The court informed the petitioner that no one could make him testify, and that the decision to testify was his, and his alone. (Id. at 37.) The petitioner was again reminded that although he may have consulted with his attorney about testifying, that decision was his, and his alone. (Id. at 38.) It was the court's observation that she had observed the petitioner closely, and the petitioner had been engaging, actively, with his counsel throughout the trial and had been an active participant in his defense. (Id. at 40.)

33. The petitioner was convicted of first degree robbery, attempted first degree murder and malicious wounding. (Id. at 138.) A special interrogatory was submitted to the jury and the jury concluded that the petitioner used a firearm in the commission of those offenses. (Id. at 143.)

5

34. The petitioner filed a direct appeal with the West Virginia Supreme Court of Appeals. By memorandum decision filed April 18, 2011, the petitioner's convictions were affirmed. *State v. Jamel Kahalid Mitchell*, Memorandum Decision, West Virginia Supreme Court of Appeals, April 18, 2011, 101577.

35. The issues raised upon appeal were the failure of the court to strike three jurors for cause, refusing to give proffered jury instructions regarding necessity and the weight to be given to the testimony of police officers, and insufficiency of the evidence. Specifically, as to the issue of the sufficiency of the evidence the Court noted that the petitioner's contention was the evidence was insufficient to sustain the robbery conviction because the state did not prove that petitioner took the vehicle driven by the victim without permission or intended to permanently deprive the owner of the vehicle.

> The victim testified that he did not know where the vehicle went after he was shot inside it. A police officer from Philadelphia testified that the vehicle the victim was driving was found in Philadelphia, the same city where petitioner was found and arrested. Petitioner's ex-girlfriend testified that she and petitioner took the vehicle to Philadelphia, and that she knew the vehicle was the one that had been driven by the victim. Finally, petitioner's mother testified that petitioner took the vehicle to Philadelphia after the shooting. The Court concludes that there was sufficient evidence to sustain the jury's conviction.

*Mitchell, supra,* at *3.

36. The petition for writ of habeas corpus ensued.

37. The petitioner is asserting the following grounds:

(a) Ineffective assistance of counsel because "Counsel for the Petitioner never allowed him to take the stand and testify regarding the facts of the alleged robbery." (Petitioner's Brief, Supplemental Argument.)

(b) Indictment shows no crime was committed in that the state failed to prove that the Impala was not in the lawful possession of the victim.

6

(c) Ineffective assistance of counsel for failing to move for a judgment of acquittal on the robbery charge because the evidence was insufficient.

(d) Failing to present the theory that the petitioner committed larceny, as opposed to robbery of the victim.

38. The relief requested specifically in both the pro se and amended pleadings is discharge from the robbery conviction only.

39. An omnibus evidentiary hearing was held on December, 2016.

40. The petitioner testified at that hearing.

41. Trial counsel, William Lester, did not testify at the omnibus evidentiary hearing.

42. William Lester has been indicted by the Kanawha County Grand Jury, and upon information and belief, is outside the United States and not amenable to service by either party. (Hearing Transcript, December 6, 2016, at 3-4.)

43. Nonetheless, the Court has adequate information from its review of the file, including the trial transcript and all other pleadings in that file, as well as the pleadings in the habeas corpus matter as well as the transcript from the omnibus evidentiary hearing to make an informed decision regarding petitioner's claims of ineffective assistance of counsel.

44. The Court will note that in determining the petitioner's credibility regarding the pertinent issues, the Court evaluated his responses, his interest in the proceedings, as well as responses regarding the same subject matter, particularly with regard to his testifying (or not) in his underlying trial.

45. The petitioner was informed that all claims not raised in this first habeas proceeding were waived, except for very limited exception. (Id. at 4.)

7

46. The petitioner testified that the defense theory was a variant on self-defense. (Id. at 13.)

47. The petitioner believed his lawyer was ineffective in not requesting an acquittal on the robbery charge, and proffered that he'd never discussed the elements of that crime with his lawyer. (Id. at 14.)

48. However, he did indicate that he was aware that one of the elements of robbery was that he had to have the intent to permanently deprive the owner of the property from that property. (Id.)

49. The petitioner asserted that the only conversation he had with his attorney about testifying at trial was that his lawyer didn't want him to. (Id. at 15.)

50. He further stated that his attorney wouldn't "let" him testify. (Id. at 16.)

51. The petitioner indicated he had very limited contact with his attorney before trial. (Id. at 23.)

52. When asked what he'd have been able to tell the jury if he'd testified at trial, the petitioner answered that he didn't know what he'd tell them, save for trying to prove that the witnesses were exaggerating or lying. (Id. at 25.)

53. He testified that he intended to kill the victim, but not rob him. (Id. at 27-28.)

54. The petitioner was 19 at the time of his trial, had obtained his GED and could read and write. (Id. at 32.)

55. He professed not to remember having a discussion with the judge at trial regarding whether or not he would testify. (Id.)

56. He did not recall being told more than once, by the judge, that the decision to testify was his and his alone. (Id. at 33.)

8

57. He did not recall being asked whether or not his lawyer had discussed completely with him what the state had to prove in order for him to be found guilty of any offense. (Id.)

58. The petitioner stated that his lawyer kept him from testifying, but did finally acknowledge that the decision to testify or not was his. (Id. at 34.)

59. The petitioner did not have a cogent explanation as to why, when the judge asked him if his lawyer had discussed with him everything the state had to prove in order for him to be convicted of any offense, he did not tell the judge that his lawyer had not had such discussion and explanation of the charges. (Id. at 35.)

60. The petitioner acknowledged there was no guarantee the jury would have believed him if he had testified. (Id. at 36.)

61. The petitioner admitted shooting the victim and taking his car, leaving the scene, although he said he did not leave "immediately." (Id.)

62. Despite the fact that the petitioner's mother had testified, under oath, at trial that the petitioner fled the scene and hid in an attic, the petitioner stated that did not happen. (Id. at 37.)

63. The petitioner admitted taking the car and fleeing to Philadelphia. (Id.)

64. As to any lapse in time between the shooting and the taking of the vehicle, the petitioner did not believe the time lapse was even ten minutes "it happened like that." (Id. at 38.)

65. The petitioner acknowledged that the taking could have been within two minutes (id. at 40) and that the victim was still in the car. The petitioner stated he was returning to the vehicle to kill the victim. (Id.) However, at some point, the victim had gotten out of the car and been hit by another vehicle. (Id. at 42.) Insofar as the petitioner answered the question proffered by his habeas counsel as to when he decided to take the victim's car, it seems to be at some unspecified time after he tried to kill the victim. (Id. at 43.)

9

## II.

## CONCLUSIONS OF LAW AND DISCUSSION

The Court will address first, the standards regarding habeas corpus, generally. The Court will then address the specific standard regarding ineffective assistance of counsel. The Court will then address the specific issues raised in the amended petition for writ of habeas corpus addressing both the facts and law, and will denote whether a specific assertion implicates a state constitutional right, a federal constitutional right, or both.

1. Jurisdiction and venue are appropriately in the Circuit Court of Kanawha County, pursuant to Rule 3 of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia.

2. West Virginia Code §53-4A-1 provides for post-conviction habeas relief for "[a]ny person-convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State or both. . ."

3. The contentions and the grounds in fact or law must "have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings in a prior petition or petitions under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence." West Virginia Code §53-4A-1.

4. West Virginia's post-conviction habeas corpus statute "clearly contemplates that [a] person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. Pt. 1, *Markley v. Coleman*, 215 W.Va. 729, 601

10

S.E. 2d 49 (2004) (citations omitted). Such proceeding gives the Petitioner an opportunity to "raise any collateral issues which have not previously been fully and fairly litigated." *Coleman* at 732, 601 S.E.2d at 52. The initial habeas corpus hearing is *res judicata* as to all matters raised and to all matters known or which, with reasonable diligence, could have been known. Syl. Pt. 2, *Coleman, supra.*

5. The habeas corpus statute "contemplates the exercise of discretion by the court." *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

6. The circuit court denying or granting relief in a habeas corpus proceeding must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. *State ex rel. Watson v. Hill, 200* W. Va. 201, 488 S.E.2d 476 (1997).

7. "Habeas corpus proceedings are civil proceedings. The post-conviction habeas corpus procedure provided for by Chapter 85, Acts of the Legislature, Regular Session, 1967, is expressly stated therein to be 'civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case.'" *State ex rel. Harrison v. Coiner*, 154 W. Va. 467, 476, 176 S.E.2d 677, 682 (1970). The burden is on the petitioner to prove his claims by a preponderance of the evidence.

8. "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, State *ex rel. McMannis v. Mohn*, 163 W. Va. 129, 254 S.E.2d 805 (1979). Moreover, "[t]he sole issue presented in a habeas corpus proceeding by a prisoner is whether he is restrained of his liberty by due process of law." Syl. Pt. 1, *State ex rel. Tune v. Thompson*, 151 W. Va. 282, 151 S.E.2d 732 (1966).

9. A circuit court having jurisdiction over habeas corpus proceedings has broad discretion in dealing with habeas corpus allegations. *Markley, supra* at 733, 601 S.E.2d at 53. It may deny

11

the petition without a hearing and without appointing counsel if the petition, exhibits, affidavits and other documentary evidence show to the circuit court's satisfaction that the Petitioner is not entitled to relief. Syl. Pt. 3, *Markley, supra.* A circuit court may also find that the habeas corpus allegation has been previously waived or adjudicated and if so, the court "shall by order entered of record refuse to grant a writ and such refusal shall constitute a final judgment." *Markley, supra,* at 733, 601 S.E. 2d at 53 (2004) (citations omitted). (citing W.Va. Code section 53-4A-3(a)). There now exists a rebuttable presumption that petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have advanced on direct appeal but which he failed to so advance. The burden of proof rests upon the petitioner to rebut that presumption. Syllabus Pts 1 and 2, in paraphrase, *Ford v. Coiner,* 156 W. Va. 362, 196 S.E.2d 91 (1972).

10. When determining whether to grant or deny relief, a circuit court is statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner and to state the grounds upon which each matter was determined. Syl. Pt. 4, *Markley, supra. See also* W.Va. Code §53-4A-3(a).

11. The petitioner has knowingly, voluntarily, and understandingly raised certain issues as enumerated above, and knowingly, voluntarily, and understandingly waived all other issues.

12. Claims of ineffective assistance begin and in large measure end with the standards set forth in *Strickland/Miller.*

13. West Virginia evaluates an ineffective assistance of counsel claim under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington.* Syl. Pt. 5, *State v. Miller,* 194 W. Va. 3, 459 S.E. 2d 114 (1995) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). To succeed on such a claim, a petitioner must establish that: 1) his trial counsel's

12

"performance was deficient under an objective standard of reasonableness; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*Id.*) "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W. Virginia Penitentiary*, 207 W. Va. 11, 528 S.E. 2d 207 (1999).

14. The *Strickland* standard is not easily satisfied. *See Miller*, 194 W. Va. at 16 ("[T]he cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between."), *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 319, 465 S.E. 2d 416, 421 (1995)(ineffective assistance claims are "rarely" granted and only when a claim has "substantial merit"), *see also*, *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)("Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof.").

15. In *Miller*, the court outlined the challenge faced by a petitioner claiming ineffective assistance, noting that judicial review of a defense counsel's performance "must be highly deferential" and explaining that there is a strong presumption that "counsel's performance was reasonable and adequate." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Moreover, the *Miller* court held that there is a "wide range" of performance which qualifies as constitutionally-adequate assistance of counsel, stating:

A defendant seeking to rebut th[e] strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue

*Id., see also Vernatter*, 207 W. Va. at 17, 528 S.E.2d at 213 ("[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .'") (quoting *Strickland*, 466 U.S. at 689).

16. A petitioner claiming ineffective assistance must identify the specific "acts or omissions" of his counsel believed to be "outside the broad range of professionally competent assistance." *See Miller*, 194 W. Va. at 17, 459 S.E.2d at 128, *State ex rel. Myers v. Painter*, 213 W. Va. 32, 35, 576 S.E.2d 277, 280 (2002)("The first prong of [the *Strickland*] test requires that a petitioner identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment)(internal quotation marks omitted).

17. The reviewing court is then tasked with determining, "in light of all the circumstances" but without "engaging in hindsight," if that conduct was so objectively unreasonable as to be constitutionally inadequate. *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128.

18. Strategic choices and tactical decisions, with very limited exception, fall outside the scope of this inquiry and cannot be the basis of an ineffective assistance claim. *Legursky*, 195 W. Va. at 328, 465 S.E.2d at 430 ("A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.")(internal quotation marks omitted), *Miller*, 194 W. Va. at 16, 459 S.E.2d at 127 ("What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

19. Identifying a mere mistake by defense counsel is not enough. *See Edwards v. United States*, 256 F.2d 707, 708 (D.C. Cir. 1958) ("Mere improvident strategy, bad tactics, mistake, carelessness or inexperience do not . . . amount to ineffective assistance of counsel, unless taken

14

as a whole the trial was a 'mockery of justice.'"). As the *Miller* court noted, "with [the] luxury of time and the opportunity to focus resources on specific facts of a made record, [habeas counsel] inevitably will identify shortcomings in the performance of prior counsel;" however, the court continued, "perfection is not the standard for ineffective assistance of counsel." *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128.

20. Even if defense counsel's conduct is deemed objectively unreasonable, and therefore satisfies the first *Strickland* prong, that conduct does not constitute ineffective assistance unless the petitioner can also establish that the deficient conduct had such a significant impact that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *Miller*, *supra*. As the Supreme Court explained in *Strickland*, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Thus, satisfying *Strickland's* "prejudice prong" requires a showing that counsel's deficient performance was serious and impactful enough to "'deprive the defendant of a fair trial, a trial whose result is reliable.'" *State ex rel. Strogen v. Trent*, 196 W. Va. 148 at n. 4, 469 S.E.2d 7, 12 (1996) (quoting *Strickland*, 466 U.S. at 687), *see also Myers*, 213 W. Va. at 36, 576 S.E.2d at 281 (2002) ("The second or "prejudice" requirement of the *Strickland / Miller* test looks to whether counsel's deficient performance adversely affected the outcome in a given case.").

21. There is no precise formula, applicable in all cases, that can be applied to determine if the constitutionally-inadequate conduct in question so significantly degraded the reliability of the trial such that the prejudice prong is satisfied. *See Legursky*, 195 W. Va. at 325, 465 S.E.2d at 427 ("Assessments of prejudice are necessarily fact-intensive determinations peculiar to the circumstances of each case."). But there is no question that the burden of demonstrating prejudice

15

lies with the petitioner. *Strickland*, 466 U.S. at 693, *Legursky*, 195 W. Va. at 319, 465 S.E.2d at 421.

22. The petitioner directly asserts ineffective assistance of counsel in three particulars: Failing to permit the petitioner to testify at trial; failing to move for a judgment of acquittal on the robbery charge because the evidence was insufficient; failing to present the theory that the petitioner committed larceny rather than robbery; and a claim that the indictment was defective. The claims regarding ineffective assistance of counsel implicate both state and federal constitutional rights. The claim regarding the indictment does not implicate federal constitutional rights, as there is no federal constitutional right to be indicted. This assertion does not in this particular implicate state constitutional rights as there is no claim that the indictment was so defective that it fails-to charge any offense.

23. The Court will stress again that it is not and was not bound to accept the petitioner's value as credible or at face value. In fact, the Court determines that much of his habeas testimony, particularly regarding the advice, or lack thereof regarding him testifying at trial, and the development of trial strategy lacks credulity. This is based upon a comparison of what the petitioner stated at his trial and this Court's observation of him and his counsel during that trial and what the petitioner stated in the omnibus hearing.

24. Counsel was not ineffective regarding the petitioner's decision not to testify. Again, although this assertion implicates both state and federal constitutional rights, the petitioner fails to sustain his burden demonstrating that the *advice* giving him regarding testifying or not was objectively unreasonable. He further fails to demonstrate that had he testified, the outcome of the trial would have differed.

16

25. This Court rejects the contention that petitioner's trial counsel would not allow him to testify. The Court further rejects the contention that all petitioner had to do to secure an acquittal was to testify that, although he fully intended to murder the victim (as he testified to at the habeas trial) he never intended to rob him of the vehicle. The Court will note that petitioner's hearing testimony on this issue was somewhat confusing, but that petitioner finally seemed to state that he only developed larcenous intent moments (or minutes) after he tried to kill the victim.

26. The advice given to a client on whether or not to testify is the epitome of a strategic decision, dependent upon an educated surmise as to how the case is going, and whether or not any benefit from the petitioner testifying is worth the risk of being subjected to cross-examination. As noted above, strategic choices and tactical decisions, with very limited exception, fall outside the scope of this inquiry and cannot be the basis of an ineffective assistance claim. *Legursky*, 195 W. Va. at 328, 465 S.E.2d at 430 ("A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.")(internal quotation marks omitted), *Miller*, 194 W. Va. at 16, 459 S.E.2d at 127 ("What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

27. Trial counsel did not prevent the petitioner from testifying, it was his own decision. A review of the colloquy engaged in by the court at petitioner's trial reveals that the petitioner was told at least twice that the decision to testify, or not, was his, and his alone.

28. Likewise, any notion that his counsel had failed to explain the elements of the offense of robbery and what the state had to prove in order to convict him of any offense is belied by the petitioner's unequivocal affirmation at trial that he understood what the state had to prove in order

17

to convict him of any offense. Therefore, the petitioner knew that intent was an element of the offense.

29. The advice not to testify was not objectively unreasonable. A review of the evidence, at the time the decision was made (and presumably the advice regarding testifying given) reveals that the petitioner's ex-girlfriend had succeeded in letting the jury know that she believed the petitioner acted in self-defense; the petitioner's mother got in the self-defense story despite well timed objections that she was testifying to hearsay; and the crime victim refused to identify the petitioner as the individual who shot him.

30. Had the petitioner taken the stand and testified he didn't intend to steal the car but merely "needed transportation out of town" or, as he testified at his habeas hearing that he needed a car to get away more quickly from a bad part of town, he would have been subjected to cross-examination about why he told Katrina Artis he was going to kill the victim, why he told Katrina Artis he did kill the victim, why when he supposedly acted in self-defense he left the victim there to die and sped off in the automobile, why he hid in his mother's attic, and why he fled to Philadelphia. Those actions are not that of an innocent man, and no amount of testimony from the victim about his lack of intent would have changed the jury's verdict.

31. The petitioner does not satisfy either prong of the *Strickland/Miller* standard. Without engaging in hindsight or second guessing, the advice not to testify was not objectively unreasonable. Counsel did not prevent the petitioner from testifying, the petitioner decided not to. Had the petitioner testified, he would still have been convicted. The jury would have been completely free to disregard the self-serving testimony from the petitioner which flies in the face of the facts that the petitioner threatened to shoot the victim, shot the victim, left him to die, fled the scene in the car which was in the lawful possession of the victim, and went to Philadelphia

18

from whence he did not voluntarily return. Therefore, subjectively, petitioner's testimony or lack thereof made no difference to the verdict.

32. The indictment was not defective. Counsel was not ineffective for failing to move for a judgment of acquittal on the robbery count as the evidence was sufficient.

33. No additional testimony or argument was made at the omnibus evidentiary hearing regarding the indictment, or the sufficiency of the evidence at trial.

33. Although petitioner's argument posits that Count 2 of the indictment was flawed upon its face, it is clear that petitioner is actually attacking the sufficiency of the evidence on that count.

34. On its face, the indictment clearly tracks the language of the statute and is constitutionally sufficient to apprise the petitioner of the elements of the offense with which he is charged and is sufficient to protect the petitioner against being place twice in jeopardy for the same offense.

> Syllabus Point 2: "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).

> Syllabus Point 3: " 'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 1, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

> Syllabus Point 4: " 'An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.-Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007).

*Ballard v. Dilworth*, 230 W. Va. 449, 739 S.E.2d 643 (2013).

35. A review of the indictment indicates that it was facially sufficient.

36. What the petitioner is actually arguing is that the state failed to prove that the car was in the lawful control of the victim. The sufficiency of the evidence was challenged on direct appeal, and the Supreme Court, in affirming the conviction stated explicitly that the evidence was sufficient to convict the petitioner. *Mitchell, supra,* at *3.

37. The precise contention, that the evidence was insufficient as to the issue of the car being in the lawful possession of the victim is a contention which could have been, but was not, raised in the direct appeal. Therefore, it is presumed that the petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have advanced on direct appeal but which he failed to so advance. The burden of proof rests upon the petitioner to rebut that presumption. *Ford, supra.*

38. The petitioner did testify that he was not consulted about his appeal. The Court is not persuaded that petitioner's testimony is entirely credible in that regard. However, the petitioner did not testify at the habeas hearing, nor has it been argued that appellate counsel was ineffective. Therefore, the petitioner fails to rebut the contention that this issue was not knowingly waived.

39. Moreover, the Court finds that the evidence adduced at trial was more than sufficient regarding the victim's lawful possession of the automobile. The Court further finds that trial counsel was not ineffective for failing to make a motion for judgment of acquittal based upon insufficiency of the evidence on that particular.

40. No reasonably objective practitioner would have made that motion in view of the substantial evidence at trial regarding ownership and possession of the car. If such motion had been made, it would not have been granted. Therefore, petitioner fails to satisfy either prong of the *Strickland*/Miller standard.

20

41. A review of the trial transcript reveals that the state proffered sufficient evidence to demonstrate that the vehicle, owned by the victim's uncle and driven solely by the victim, was in his lawful possession. The victim testified that the car belonged to his uncle and that he, the victim, borrowed the car.

42. The word borrow, as defined by the Concise Oxford English Dictionary, means to take and use property with the intention of returning it to its legal owner. Interestingly, one of the elements of the crime of robbery is the intention to steal property or to deprive the owner permanently of his property. Syl. Pt. One, in part, *State v. Breeden*, 174 W. Va. 705, 329 S.E.2d 71 (1985.) One who borrows property is in lawful possession of the property, on a temporary basis. The petitioner testified that he borrowed his uncle's car, and the evidence at trial was that the uncle reported the car stolen only after the victim had been shot and robbed of the car by the petitioner. (Trial Transcript, Day One at 186, 15).

43. The petitioner does not contend that the late uncle did not own the car, nor that the victim had the car without permission.

44. So, the evidence was sufficient to demonstrate that the victim had legal possession of the vehicle. "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *Mitchell, supra*, at *3.

21

45. Taken in the light most favorable to the prosecution, the evidence demonstrated that the petitioner was in lawful possession of his uncle's vehicle until he was robbed of that vehicle, being shot and left for dead.

46. As the evidence was more than sufficient, counsel was not ineffective for failing to move to dismiss that count. The transcript does indicate that trial counsel made a motion, which was denied, for a judgment of acquittal for failure of the state to prove its case at the end of the state's evidence. The indictment was not defective, the evidence of lawful possession was sufficient.

47. Counsel was not ineffective for failing to pursue the theory that the petitioner committed the lesser offense of larceny as opposed to robbery.

48. The defense at trial was self-defense, and that there was, therefore no robbery because the petitioner did not have the intent to permanently deprive the owner of the vehicle and took the vehicle only out of necessity.

49. The evidence at trial not support the granting of an instruction on any lesser offense. The alternative theory of unlawful taking could not have been considered by the jury as an alternative verdict absent some evidence that the petitioner had committed a simple larceny as opposed to a robbery.

50. The offense of larceny at common law was the taking of personal property of another against his will, and with the intent to permanently deprive the owner of that property. Syl. Pt. 4, in paraphrase, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902. (1982).

51. At common law, the offense of robbery was the unlawful taking of goods from another with the intent to steal the property, by force, or putting one in fear. Syl. Pt. 3, in paraphrase,

22

*Neider, supra.* Larceny is a lesser included offense of robbery. Syl. Pt. 4, in paraphrase, *Neider, supra.*

52. "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. Pt. 2, *Neider, supra.*

53. "As previously stated, the additional elements which separate robbery from larceny are that the taking has been from the person of another or in his presence and that the taking is by force or putting the person in fear. Under the factual test discussed above for the defendant to have been entitled to an instruction on larceny as a lesser included offense it was essential for her during trial to have contested the distinguishing elements." *Neider, supra,* at 608, 295 S.E.2d at 908.

54. The evidence was that the taking of property was from the person of another. The petitioner did not contest that the automobile was in the possession of the victim. The taking was accomplished by the petitioner shooting the victim, thereby satisfying the elements of robbery.

55. There is no evidence that the petitioner simply took the vehicle, without the use of nearly deadly force. As the petitioner would not have been entitled to an instruction on any lesser included offense, counsel was not ineffective for failing to espouse that theory.

56. Moreover, even if counsel had requested a lesser included offense, it would not have been given. The results of the trial would not have changed; petitioner would still have been convicted. Therefore, the petitioner does not meet the requirements of the *Strickland/Miller* standard. It was not objectively deficient performance to fail to espouse a theory which flew in the face of the evidence.

23

57. The Court does not believe that petitioner's self-serving testimony at the omnibus habeas hearing about his intent, or the lack thereof, would have entitled the petitioner to a lesser-included offense instruction, even had he testified at trial.

58. The Court does not find persuasive petitioner's testimony that he shot the victim and as an afterthought took the vehicle. Even in the light most favorable to the petitioner, his testimony at the habeas hearing supports the theory that the petitioner determined to murder the victim and rob him of his vehicle in order to facilitate his flight out of town.

59. The Court finds the petitioner's attempt to parse out the offenses flies in the face of the evidence that there was but one continuous criminal transaction, rendering the case at bar completely analogous to those decisions regarding felony murder in which an appellant has proffered the theory that as the robbery took place after the individual already killed the victim, there can be no robbery.

> In the case now before us, we find no insufficiency on the elements of the greater offense, robbery, which would require the giving of the lesser included offense instruction. Regardless of the fact that the victim might have been dead at the time the robbery occurred, the jury found the defendant guilty of felony-murder, obviously finding that the taking was by force. In *State v. Wayne*, 169 W.Va. 785, 289 S.E.2d 480 (1982), this Court adopted the rule that in order for the felony-murder statute to apply, the initial felony and the homicide must be part of a continuous transaction, closely related in point of time, place, and causal connection for the felony-murder statute to apply. Id. at syl. pt. 2. Given the defendant's early statements to the police that he took the money before he left the house, we believe that the State provided sufficient evidence for the jury to find a continuous transaction and causal connection between the homicide and the intent to rob Mr. Thrash of the money. *State v. Ruggles*, 183 W. Va. 58, 63, 394 S.E.2d 42, 47, (1990).

60. In conclusion, the Court finds that the petitioner received a fair trial with the effective assistance of counsel. The indictment was not defective. The petitioner fails to satisfy either prong of the *Strickland/Miller* analysis with regard to his counsel's assistance.

24

## III.

## CONCLUSION

THEREFORE, based upon a thorough and complete review of the complete contents of the criminal case file in this matter, including the trial transcripts; in consideration of the testimony at the omnibus evidentiary hearing, and considering the arguments of counsel for the petitioner and the warden both at the hearing and in written submissions, it is ORDERED that the petition seeking a writ of habeas corpus be and the same is hereby DENIED. It is further ORDERED that said civil action be and the same is hereby DISMISSED. The Court notes the exceptions and objections of the petitioner.

ENTERED this 21st day of May, 2018.

_____
Judge Jennifer F. Bailey
Kanawha County Circuit Court

. Respectfully submitted by:

Laura Young
Assistant Prosecuting Attorney
WV Bar ID# 4173

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS 25
DAY OF May, 2018
_____ CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

25